IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TOIVANIA E. GILL, | ) |
|     Plaintiff, | ) Civil Action No. 7:19CV00479 |
| v. | ) **MEMORANDUM OPINION** |
| TBG FOOD ACQUISITION CORP., | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
|     Defendant. | ) |

    Toivania E. Gill, proceeding pro se, filed this action against her former employer, TBG Food Acquisition Corp. ("TBG"), asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act ("ADA"), and Virginia law. The case is presently before the court on TBG's motion to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

## Background

    The following facts, taken from Gill's amended complaint and her responses in opposition to the motion to dismiss, are accepted as true for purposes of the pending motion.[1] See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (emphasizing that a "a judge must accept as true all of the factual allegations contained in the complaint" when ruling on a motion to dismiss, and that a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks and citations omitted); Brown v. Whole Foods Mkt. Grp. Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (holding that the district court should have considered all of the pro se

---

[1] Gill filed an opposition to the motion to dismiss (ECF No. 20) and a memorandum in support of the opposition (ECF No. 19). Although the opposition was received after the deadline noted on the docket, the court will consider it timely filed in light of Gill's pro se status and the fact that it was filed only one day late.

plaintiff's allegations, including those set forth in his brief in opposition to the defendant's motion to dismiss).

In May of 2017, TBG hired Gill, an African-American woman, to work as a full-time "front cashier employee" at a Dunkin' Donuts store on Orange Avenue in Roanoke, Virginia. Am. Compl. at 7, ECF No. 15. Gill, who was pregnant at the time, remained in that position until July of 2017, when John and Kaylee Peterson became her new supervisors. On July 3, 2017, Kaylee reassigned Gill to a less desirable position in the back of the store and gave her more strenuous tasks to perform, even though Kaylee knew that Gill was pregnant. Immediately after Gill was reassigned, Kaylee "hired an untrained, Caucasian female to work the front counter." Id.

Gill also alleges that Kaylee subjected her to "verbally harassing comments regarding her race." Id. at 8. On or about July 15, 2017, Kaylee "started to refer to all African Americans, in conversations with [Gill], as 'your people.'" Id. Kaylee would also use the term "your people" whenever she saw Gill speaking to African-American customers. For instance, Kaylee would say, "I see you talking to your people." Id. (internal quotations omitted). Kaylee also told Gill that she had not seen any of Gill's "people" apply for open positions at the store. Id. Gill alleges that the racial comments "were made on a regular basis" and that they "became a condition of [her] employment." Pl.'s Opp'n Mot. Dismiss at 2, ECF No. 20.

On or about July 20, 2017, Gill learned that her Caucasian co-workers were receiving access to online training that could potentially lead to raises and/or promotions. Gill alleges that she "was not given an equal opportunity to access the training because of her race." Am. Compl. at 8. Gill's co-workers "were encouraged to do the training during their shifts, while on the clock." Id. However, when Gill asked Kaylee about the training, Kaylee advised her that she would need to do the training at home and on her own time.

On or about July 20, 2017, Gill learned that her pregnancy was "high risk due to excess stress, depression, and diabetes." Id. at 9. Consequently, Gill asked Kaylee if she could be assigned to a less strenuous position. Gill alleges that Kaylee "denied the request" on the basis that "she would need to hire staff for other vacant positions before she could move [Gill]." Id.

On or about August 1, 2017, John made "offensive comments" regarding Gill's pregnancy. Id. For instance, John advised Gill that "no[one] wants their food made by someone with a big belly." Id. (internal quotation marks omitted). Peterson also "repeatedly" told Gill that she "need[ed] to go on maternity leave because her stomach was too big to be working in the restaurant." Id. Gill alleges that the pregnancy-related comments "were made on a regular basis" and that they "became a condition of [her] employment." Pl.'s Opp'n Mot. Dismiss at 2.

On September 29, 2017, John was party to or overheard a conversation in which Gill mentioned that she suffers from post-traumatic stress disorder ("PTSD"), severe anxiety, claustrophobia, and major depressive disorder. Later that same day, while Gill was working inside a walk-in freezer, John turned off the lights to the freezer and prevented Gill from opening the freezer door. As a result, Gill suffered a severe anxiety attack. By the time that she was able to exit the freezer, John had left work for the day. Gill informed Kaylee about the incident and remained off work for several days due to emotional distress.

On or about October 2, 2017, Gill reported the freezer incident to Kevin Allardi, a district manager for TBG. During the conversation, Gill disclosed her diagnosed mental impairments and expressed concerns about returning to work. Gill alleges that Allardi disregarded her concerns and referred to the freezer incident as "a joke." Am. Compl. at 11. Allardi also indicated that John had been employed by TBG for six years and would not be disciplined for the incident. Allardi initially proposed relocating Gill to a different store. Gill and Allardi

ultimately agreed that Gill would continue working at the Orange Avenue location with the understanding that she would not have to work alone with John or enter the walk-in freezer. However, when Gill returned to work on October 4, 2017, she was required to work alone with John. Gill alleges that John "made several intimidating remarks" and "displayed hostile body language by slamming and banging equipment." Id. at 12. As result, Gill was "humiliated, distraught, and intimidated," and she "spent most of the day in the bathroom sobbing and suffering panic attacks." Id.

On October 4, 2017, Gill "made an official complaint of harassment and discrimination to the HR Department." Id. That same day, Gill was "written up" by Kaylee for "alleged insubordination," and advised that she would still be required to work alone with John. Id.; see also Pl.'s Mem. Opp'n Mot. Dismiss at 4, ECF No. 19.

Gill alleges that John proceeded to "slander" her "in regards to her disabilities [and] her request for reasonable accommodations," by claiming that she was "lazy," "insubordinate," and "disliked following directions." Am. Compl. at 12. Such harassment continued from the time she returned to work on October 4, 2017 until she resigned at the end of November. See Pl.'s Opp'n Mot. Dismiss at 4 ("Plaintiff was also subjected to an increasingly hostile work environment where she was slandered by John Peterson to co-workers regarding her disclosed disabilities and her requests for reasonable accommodations from the time she returned to work on Oct. 4, 2017 until the time of constructive discharge on November 30, 2017.").

On November 10, 2017, Gill witnessed a co-worker with disabilities being harassed by another employee, Navy Washington. When Gill spoke to Washington about the harassment, Washington yelled at Gill and told her that she was "disliked by management because [Gill] refused to 'stay in her place' when it came to reporting, speaking out, and participating in protected

4

activity." Am. Compl. at 13. After Gill reported Washington's behavior, Kaylee advised her that she would be written up again. On November 13, 2017, Gill "received and signed a write-up alleging that she had spoken to Navy Washington in 'an elevated voice'" and would have created a disturbance if customers had been present in the store. Id.

On November 17, 2017, Gill was presented with another write-up, which detailed alleged incidents of misconduct dating back to August of 2017, and accused Gill of "insubordination." Id. at 14; see also Def.'s Mem. Supp. Mot. Dismiss Ex. B, ECF No. 17-2. The disciplinary notice was marked as a final warning, and indicated that Gill would be subject to further disciplinary action, including termination, if her behavior and performance did not improve.

On November 22, 2017, Gill went into premature labor and gave birth to her third child. Gill claims that she was constructively discharged when she returned to work on November 30, 2017, and had to work with Kaylee. Gill alleges that Kaylee made her work intolerable by using "aggressive body language" and by refusing to verbally communicate with her while they were working together. Am. Compl. at 17. Later that day, Gill informed Kaylee that she was resigning.

Gill alleges that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 12, 2018. Id. at 5. On March 29, 2019, the EEOC issued a right-to-sue letter. Am. Compl. Ex. 1, ECF No. 15.

## Procedural History

Gill filed the instant action on July 1, 2019. Her original complaint named TBG, Allardi, John, and Kaylee as defendants. On November 6, 2019, the defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thereafter, Gill filed an amended complaint naming TBG as the sole defendant.

Liberally construed, the amended complaint asserts that Gill was subjected to various forms of discrimination and retaliation, in violation of Title VII, the PDA, and the ADA. Gill also attempts to state a claim for negligent supervision under state law. She seeks to recover damages for emotional distress and lost income, as well as punitive damages.

TBG has moved to dismiss the amended complaint under Rule 12(b)(6). The motion has been fully briefed and argued, and the matter is now ripe for review.

### Standard of Review

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 663). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a facially plausible claim. Iqbal, 556 U.S. at 678.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir.

1996). One such defense is the statute of limitations. See Jones v. Bock, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal . . . ."); see also Agolli v. Office Depot, Inc., 548 F. App'x 871, 875 (4th Cir. 2013) (affirming the Rule 12(b)(6) dismissal of the plaintiff's Title VII claim as time-barred).

## Discussion

### I. Claims under Federal Law

Gill asserts claims under three federal statutes: Title VII, the PDA, and the ADA. Title VII prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). "The PDA amended Title VII to add that discrimination 'because of sex' or 'on the basis of sex,' includes discrimination 'on the basis of pregnancy, childbirth, or related medical conditions.'" Hicks v. City of Tuscaloosa, 870 F.3d 1253, 1258 (11th Cir. 2017) (quoting 42 U.S.C. § 2000e(k)). The ADA prohibits discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Additionally, both Title VII and the ADA prohibit an employer from retaliating against an employee for engaging in protected activity. See 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA).

#### A. Timeliness of Certain Claims

TBG argues that several claims of discrimination are time-barred, including Gill's claims of disparate treatment under Title VII and her claims of failure to accommodate in violation of the PDA and the ADA. For the following reasons, the court agrees.

7

1.      **<u>Disparate Treatment under Title VII</u>**

Disparate treatment is a form of discrimination that occurs when an employer treats an employee less favorably than others on the basis of a protected classification such as race or sex. <u>Carter v. Ball</u>, 33 F.3d 450, 456 n.7 (4th Cir. 1994). The United States Court of Appeals for the Fourth Circuit has held that "claims for disparate treatment should be dismissed if not timely filed." <u>Perkins v. Int'l Paper Co.</u>, 936 F.3d 196, 207 (4th Cir. 2019). Under Title VII, Gill was required to file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Consequently, Gill "may proceed and recover only on deliberate discrimination that occurred within the 300 days of filing [her] charge." <u>Perkins</u>, 936 F.3d at 207. Gill specifically alleges that she filed her charge of discrimination on September 12, 2018. As a result, any disparate treatment claims involving conduct that occurred prior to November 16, 2017 are untimely. <u>See</u> <u>id.</u>

Based on the allegations in the amended complaint, it is clear that Gill's claims of disparate treatment for being reassigned to a less desirable position and excluded from access to online training occurred in July of 2017. <u>See</u> Am. Compl. at 7 (alleging that she was reassigned on or about July 3, 2017); <u>id.</u> at 8 (alleging that she observed Caucasian employees being given access to online training on or about July 20, 2017, and that she was not offered the same training opportunities). Consequently, such claims are untimely. <u>See</u> <u>id.</u>

In response to the pending motion, Gill argues that she is entitled to rely on the continuing violation doctrine. That doctrine, however, applies only to hostile work environment claims. <u>Perkins</u>, 936 F.3d at 209 n.5; <u>see also</u> <u>Gilliam v. S.C. Dep't of Juvenile Justice</u>, 474 F.3d 134, 140 (4th Cir. 2007) (explaining that the continuing violation doctrine allows for "evidence of behavior occurring outside of the applicable limitations period [to] be used to support a plaintiff's hostile

work environment claim"). The doctrine cannot be used to save untimely claims of disparate treatment, which challenge discrete acts of discrimination. Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004); see also Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 221–22 & n.5 (4th Cir. 2016) (noting that the continuing violation doctrine applies to hostile work environment claims but "cannot be used to pursue claims challenging time-barred discrete acts").

For these reasons, TBG's motion to dismiss will be granted as to Gill's claims of disparate treatment occurring prior to November 16, 2017, including her claims that she was reassigned to a less desirable position and excluded from training because of her race.

### 2. Failure to Accommodate under the PDA

The court likewise concludes that Gill's accommodation claim under the PDA is time-barred. The Supreme Court has recognized that the denial of a pregnancy-related accommodation may constitute "disparate treatment" under the PDA. Young v. UPS, Inc., 575 U.S. 206, 228–29 (2015). Consequently, the claim is subject to the same 300-day charge-filing requirement as Gill's other claims of disparate treatment in violation of Title VII. See Wenzlaff v. Nations Bank, 940 F. Supp. 889, 892 (D. Md. 1996) (citing 42 U.S.C. § 2000e-5(e)). In the amended complaint, Gill alleges that she asked Kaylee if she could be assigned to a less strenuous position on or around July 20, 2017, and that Kaylee denied the request. Because the requested accommodation was denied more than 300 days prior to the date on which Gill filed her charge of discrimination, the claim of failure to accommodate under the PDA is untimely.

Gill once again relies on the continuing violation doctrine in an attempt to avoid dismissal. However, "a defendant's failure to accommodate constitutes a discrete act rather than an ongoing omission." Hill v. Hampstead Lester Morton Court Partners LP, 581 F. App'x 178, 181 (4th Cir. 2014). Accordingly, the continuing violation doctrine is "inapplicable," and Gill's claim

9

premised on the denial of an accommodation in July of 2017 is subject to dismissal as time-barred. Id.

### 3. Failure to Accommodate under the ADA

TBG also argues that Gill's accommodation claim under the ADA is untimely. The ADA defines discrimination to include an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). In the amended complaint, Gill alleges that she was denied an agreed-upon accommodation for her mental disabilities on October 4, 2017, when she was advised that she would be required to work alone with John. Id.

The ADA incorporates Title VII's administrative procedures, including the requirement that a charge must be filed with the EEOC within 300 days of the alleged unlawful conduct. See 42 U.S.C. § 12117(a) (incorporating the procedures set forth in 42 U.S.C. § 2000e-5). Because the agreed-upon accommodation was denied more than 300 days prior to the date on which Gill filed her charge of discrimination, the claim of failure to accommodate under the ADA is untimely. Accordingly, TBG's motion will be granted as to this claim.

### B. Hostile Work Environment Claims under Title VII, the PDA, and the ADA

Gill also asserts that she was subjected to a hostile work environment on the bases of her race and pregnancy, in violation of Title VII and the PDA, and because of her disabilities, in violation of the ADA. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (reaffirming that Title VII's prohibition on discrimination includes the creation of a hostile work environment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (internal quotation marks and citation omitted); Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001) (concluding that "the ADA, like Title VII, creates

a cause of action for hostile work environment harassment"). To prevail on such claims, the plaintiff must establish: (1) that she experienced unwelcome harassment; (2) that the harassment was based on a protected trait; (3) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc). In moving to dismiss these claims, TBG focuses on the third element, arguing that the facts alleged in the complaint do not describe the type of severe or pervasive harassment required to create a hostile work environment.[2] For the following reasons, the court is unpersuaded.

"[I]n the Fourth Circuit, the question of whether harassment was sufficiently severe or pervasive is quintessentially a question of fact." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 733 (4th Cir. 1997) (internal citation and quotation marks omitted). The question "is not answered by a 'mathematically precise test,' but rests on a variety of factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209 (4th Cir. 2014) (quoting (Harris, 510 U.S. at 22–23). Moreover, harassment "need not be severe and pervasive to impose liability; one or the other will do." Hostetler v. Quality Dining, Inc., 218

---

[2] To the extent that TBG alternatively suggests that Gill's claims of hostile work environment are time-barred, the court disagrees. Gill alleges that John and Kaylee repeatedly made offensive comments regarding her race, pregnancy, and/or disabilities throughout her period of employment with TBG. Viewing the allegations in the light most favorable to Gill, the court is satisfied that Gill has sufficiently alleged a continuing violation occurring both before and during the applicable limitations period. Consequently, the court finds it appropriate to consider the "entire scope" of conduct alleged in support of the claims of hostile work environment, "including behavior occurring prior to the limitations period." Gilliam, 474 F.3d at 142; see also id. at 140 (Under the continuing violation doctrine, "a hostile work environment claim may appropriately extend . . . to acts that occurred before the limitations period [if] the hostile work environment continued within the limitations period as well.") (internal quotation marks and citation omitted).

F.3d 798, 808 (7th Cir. 2000); see also Harris v. Mayor of Baltimore, 429 F. App'x 195, 201 n.7 (4th Cir. 2011) ("Our precedent makes clear, however, that the element is properly reviewed in the disjunctive, requiring only that a plaintiff prove the harassment was severe or pervasive.") (emphasis in original).

In this case, Gill alleges that Kaylee began subjecting her to inappropriate racial remarks in July of 2017, when Kaylee "started to refer to all African Americans, in conversations with [Gill], as 'your people.'" Am. Compl. at 8. Gill further alleges that John began making offensive comments about her pregnancy in August of 2017, when he started telling Gill that she needed to go on maternity to leave because "her stomach was too big to be working in the restaurant" and "no[one] wants their food made by someone with a big belly." Id. at 9 (internal quotation marks omitted). In her opposition to TBG's motion, Gill alleges that Kaylee and John "repeatedly made offensive comments" regarding her race and pregnancy, that the comments "were made on a regular basis," and that they "became a condition of [her] employment." Pl.'s Opp'n Mot. Dismiss at 2.

With respect to her hostile work environment claim under the ADA, Gill alleges that John "harassed her based upon disclosed disabilities," that the harassment began with the freezer incident on September 29, 2017, and that she "suffered severe emotional distress and did not return to work for several days" as a result of that incident. Am. Compl. at 10–11. Gill further alleges that from the time she returned to work on October 4, 2017 until she resigned on November 30, 2017, she was "subjected to an increasingly hostile work environment where she was slandered by John Peterson to co-workers regarding her disclosed disabilities and her requests for reasonable accommodations." Pl.'s Opp'n Mot. Dismiss at 4.

Viewing the allegations in the light most favorable to Gill, as the court must at this stage of the litigation, the court concludes that Gill has adequately alleged that her supervisors' conduct and comments were severe or pervasive enough to alter the conditions of her employment and create an abusive atmosphere. See Boyer-Liberto, 786 F.3d at 278 (observing that a harasser's status as a supervisor may be a "significant factor," since "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character"). It remains to be seen whether Gill can provide evidence of comments or conduct sufficiently severe or pervasive to create a hostile work environment. At this stage of the proceedings, however, her allegations are sufficient to survive a motion to dismiss. Accordingly, TBG's motion will be denied with respect to Gill's hostile work environment claims under Title VII, the PDA, and the ADA.

C.  **Retaliation Claim under the ADA**

The court next considers whether TBG is entitled to dismissal of Gill's claim of retaliation in violation of the ADA.[3] Gill alleges that "she was retaliated against by Kaylee Peterson after reporting John Peterson's harassment of herself based on her disabilities on Sept. 29, 2017 and after witnessing and reporting Navy Washington's harassment of another worker based on [the worker's] disabilities on November 10, 2017." Am. Compl. at 14. In particular, Gill contends that Kaylee issued her a "final unwarranted write-up" on November 17, 2017, and that this "negative employment action . . . would dissuade a reasonable person from opposing and/or reporting discrimination and harassment." Pl.'s Opp'n Mot. Dismiss at 4.

The ADA prohibits employers from retaliating against an employee for engaging in protected activity. 42 U.S.C. § 12203. To state a claim for retaliation, a plaintiff must allege

---

[3] In her retaliation claim, Gill also references Title VII. However, the claim is based on acts allegedly taken in response to reports of purported disability discrimination. Because "Title VII does not encompass discrimination on the basis of disability," the Title VII retaliation claim will be dismissed without further discussion. Davis v. Team Elec. Co., 520 F.3d 1080, 1093 n.8 (9th Cir. 2008) (holding that the magistrate judge erroneously treated a claim of disability-related retaliation as a possible violation of Title VII).

13

"(1) that [s]he engaged in protected activity; (2) that [her] employer took an adverse action against [her]; and (3) that a causal connection existed between the adverse activity and the protected action." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 577 (4th Cir. 2015) (alteration in original) (citation omitted). In moving to dismiss the retaliation claim, TBG focuses on the second element, arguing that the disciplinary notice issued on November 17, 2017 does not constitute a sufficiently adverse action. At this stage of the proceedings, however, the court is unable to agree.

"Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." Fox, 247 F.3d at 176. In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that "the antiretaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68; see also S.B. v. Bd. of Educ., 819 F.3d 69, 78 (4th Cir. 2016) (applying the "materially adverse" standard to a retaliation claim under the Rehabilitation Act); Streiff v. Anne Arundel Cty. Bd. of Educ., 1:13-cv-00845, 2014 U.S. Dist. LEXIS 174614, at *8 (D. Md. Dec. 18, 2014) (noting that courts "regularly apply White to ADA and Rehabilitation Act claims of wrongful retaliation to evaluate the materiality of allegedly adverse conduct").

Applying this standard, the court is unable to conclude that Gill's retaliation claim fails a matter of law at this stage of the proceedings. Courts within the Fourth Circuit, including this one, have recognized that a written reprimand may constitute an adverse action in the retaliation context. See Hernandez v. Fairfax Cty., 719 F. App'x 184, 189 (4th Cir. 2018) (agreeing that a written reprimand that rendered an employee ineligible for promotions for one year qualified as an adverse action); Nye v. Roberts, 145 F. App'x 1, 5 (4th Cir. 2005) (holding that "a reasonable jury could find that, in the context of [the employer's] system of progressive discipline, the reprimand and performance evaluation resulted in a material change in Nye's employment status"); Kim v. Donahoe, No. 1:13-cv-00838, 2015 U.S. Dist. LEXIS 60508, at *25 (M.D.N.C. May 8, 2015) (observing that "letters of reprimand can be materially adverse") (collecting cases); Koenig v. McHugh, No. 3:11-cv-00060, 2012 U.S. Dist. LEXIS 40924, at *18 (W.D. Va. Mar. 23, 2012) (Conrad, J.) (declining to find at the Rule 12(b)(6) stage that a letter of counseling would not have dissuaded a reasonable employee from pursuing a charge of discrimination). Viewing the record in the light most favorable to Gill, the court concludes that the final disciplinary notice issued on November 17, 2017, which placed Gill one step away from termination, was "sufficiently adverse to survive the pleading stage." Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., No. 1:15-cv-7710, 2017 U.S. Dist. LEXIS 48014, at *25 (S.D.N.Y. Mar. 30, 2017) (permitting plaintiff to proceed on her claim of retaliatory disciplinary warnings). Accordingly, TBG's motion to dismiss will be denied with respect to Gill's claim of retaliation under the ADA.

### D. Constructive Discharge Claim under Title VII

In her final claim under federal law, Gill alleges that "she was constructively discharged on or around Nov. 30, 2017 under Title VII . . . because her work environment became intolerable and was so hostile it interfered with her work performance." Am. Compl. at 17. On that particular

date, Gill was "forced to work with Kaylee." Id. at 16. Gill alleges that "Kaylee's aggressive body language and refusal to verbally communicate" made the work environment "intolerable." Id. at 17. Consequently, Gill called Kaylee that same day and resigned.

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Green v. Brennan, 136 S. Ct. 1769, 1776 (2016) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)). In such situation, Title VII treats the employee's resignation as being tantamount to an actual discharge. Id. "A claim of constructive discharge therefore has two basic elements": (1) the plaintiff must show that she was "discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign"; and (2) the plaintiff must show that she "actually resigned." Id. at 1777.

In moving to dismiss this claim, TBG correctly notes that the level of intolerability required to state a claim of constructive discharge is higher than the showing required for a hostile work environment claim. See Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019); see also Ulrey v. Reichhart, 941 F.3d 255, 262 (7th Cir. 2019) ("A constructive discharge can result from a hostile work environment only if the environment is even more egregious than that needed for a hostile work environment.") (internal quotation marks and citation omitted). The demanding standard is not met by allegations suggesting that a reasonable person would have viewed resignation as the wisest or best decision. Evans, 936 F.3d at 193. Instead, the plaintiff must show that her working conditions became so intolerable that a reasonable person "would have had no choice but to resign." Evans, 936 F.3d at 193 (internal quotation marks and citations omitted) (emphasis in original). "'Unless conditions are beyond ordinary discrimination, a

complaining employee is expected to remain on the job while seeking redress.'" Id. (quoting Suders, 542 U.S. at 147).

The Fourth Circuit has made clear that "difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign." Id. For instance, in Williams v. Giant Food, Inc., the plaintiff alleged that her supervisors yelled at her, told her that she was a poor manager, gave her poor evaluations, chastised her in front of customers, and forced to work with an injured back on one occasion. 370 F.3d at 434. The Fourth Circuit agreed with the district court that such allegations, even if true, did "not establish the objectively intolerable working conditions necessary to prove a constructive discharge." Id. Accordingly, the court affirmed the dismissal of the constructive discharge claim under Rule 12(b)(6). Id.; see also Ofoche v. Apogee Med. Grp., No. 19-1157, 2020 U.S. App. LEXIS 16149, at *4 (4th Cir. May 20, 2020) (holding that allegations of "discipline, social ostracization, and assignment to less favorable working conditions" were not "sufficient to make a constructive discharge plausible"); Stennis v. Bowie State Univ., 716 F. App'x 164, 167 (4th Cir. 2017) (affirming the dismissal of a constructive discharge claim where the plaintiff alleged that she "received threatening and intimidating emails and that the environment was hostile").

Against this backdrop, the court agrees that the amended complaint fails to state a plausible claim of constructive discharge in violation of Title VII. Although the interactions that Gill had with Kaylee prior to her resignation may have been frustrating and unpleasant, the court is unable to conclude that the alleged facts plausibly rise to the level of intolerability required by existing precedent. Accordingly, TBG's motion to dismiss will be granted with respect to Gill's constructive discharge claim.

## II.     Claim under State Law

In addition to her claims under federal law, Gill attempts to assert a state law claim of negligent supervision against TBG.  For the following reasons, the court concludes that this claim is subject to dismissal under Rule 12(b)(6).

It is well-settled that an essential element of a negligence-based tort claim is the existence of a legal duty on the part of the defendant.  Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 624 S.E.2d 55, 62 (Va. 2006).  When presented with similar allegations of harassment by supervisors, the Supreme Court of Virginia has held that "there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances," and that it "will not create one."  Chesapeake v. Potomac Tel. Co. v. Dowdy, 365 S.E.2d 751, 753–4 (Va. 1988) (declining to recognize a cause of action for negligence supervision where the plaintiff alleged that the "defendants were on 'full notice' that their 'harassing actions' toward him affected his physical condition adversely" and "were guilty of nonfeasance in failing to assist him despite many requests made to the company"); see also A.H. v. Church of God in Christ, Inc., 831 S.E.2d 460, 470 (Va. 2019) ("Our precedent . . . has held that an employer has no general duty to supervise one employee to protect another employee from intentional or negligent acts.").  Accordingly, in the absence of a duty to supervise, Gill cannot state a cognizable claim for negligent supervision against TBG.

## Conclusion

For the reasons stated, TBG's motion to dismiss will be granted in part and denied in part. The case will proceed on the hostile work environment claims under Title VII, the PDA, and the ADA, and the ADA retaliation claim.  All other claims will be dismissed under Rule 12(b)(6).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This \_\_9th\_\_ day of July, 2020.

                                          /s/ Glen Conrad
                                          Senior United States District Judge

19

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TOIVANIA E. GILL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19CV00479 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TBG FOOD ACQUISITION CORP., | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

For the reasons stated in the accompanying memorandum opinion, it is hereby

**ORDERED**

as follows:

1. The defendant's motion to dismiss (Dkt. No. 16) is **GRANTED IN PART AND DENIED IN PART**;

2. The case will proceed on the plaintiff's hostile work environment claims under Title VII, the PDA, and the ADA, and the plaintiff's ADA retaliation claim; and

3. All other claims are dismissed under Federal Rule of Civil Procedure 12(b)(6).

The Clerk is directed to send copies of this order and the accompanying memorandum opinion to the plaintiff and all counsel of record.

DATED: This __9th__ day of July, 2020.

_____
Senior United States District Judge