IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TOIVANIA GILL,** | ) |
| **Plaintiff,** | ) Civil Action No. 7:19-cv-00479 |
| v. | ) |
| **TBG FOOD ACQUISITION CORP.,** | ) **By: Hon. Robert S. Ballou** |
| | ) **United States Magistrate Judge** |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

In this employment discrimination case, Defendant, TBG Food Acquisition Corp. ("TBG") seeks summary judgment against *pro se* Plaintiff, Toivania Gill ("Gill") on her claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act ("PDA"), and the Americans with Disabilities Act ("ADA") that TBG subjected her to a hostile work environment. TBG also seeks summary judgment on Gill's retaliation claim under the ADA.[1] Dkt. 65. Plaintiff filed a motion to compel and for sanctions. I have considered the pleadings filed, applicable law, and oral arguments presented, I **RECOMMEND** that the district court **GRANT** TBG's motion for summary judgment (Dkt. 65) and I **DENY** Plaintiff's motion to compel (Dkt. 71).

**I.    Background**

As a preliminary matter, Gill failed to produce counter-affidavits within twenty-one days of the Roseboro Notice entered and mailed to the plaintiff on August 2, 2021. Dkt. 68. The Notice advised Gill of the summary judgment procedure and the possible consequences if she

---

[1] Judge Conrad dismissed Gill's claims for (1) negligent supervision under Virginia law, (2) constructive discharge (3) disparate treatment under Title VII, (4) failure to provide adequate accommodations under the PDA, and (5) failure to accommodate her perceived disabilities under the ADA. Dkt. 27.

failed to respond. Id. At the summary judgment stage, a party cannot merely rely on matters pleaded in the complaint, but must respond to a summary judgment motion with a factual affidavit or a similar verified sworn pleading that is signed, sworn, and submitted under the penalty of perjury. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (citing Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976)); Fed. R. Civ. P. 56(e). Indeed, for summary judgment purposes, a verified complaint is the equivalent of an opposing affidavit, when the allegations contained therein are based on personal knowledge. Griffin, 952 F.2d at 823 (citing Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979)). However, since Gill failed to produce a verified complaint or counter-affidavits, the court cannot rely on the factual allegations that are only present in Gill's Amended Complaint.[2]

The facts taken in the light most favorable to Gill as the nonmoving party show that TBG hired Gill, an African American woman, in May 2017, to work as a front cashier at a Dunkin' Donuts store in Roanoke, Virginia ("Store"). Def.'s Mot. for Summ. J. ("Def.'s Br."), Ex. 1, Gill Dep., 9. At the time, Gill was pregnant in what was determined as a high-risk pregnancy. Def.'s Br., Ex. 9. Gill worked without incident until July 2017 when TBG brought in John and Kaylee Peterson as supervisors at the Store. Gill claims that at this point she began to endure such harassment from John and Kaylee Peterson that it became a hostile work environment.

Gill's hostile work environment claims arise under Title VII, the PDA, and the ADA. The Title VII claim relates to comments that Kaylee Peterson referred to African Americans as "your people" in conversations with Gill for purposes of hiring individuals to work at the Store. Gill Dep., 24–26. Gill believes that Ms. Peterson made these comments because of Gill's race. Other

---

[2] For the reasons explained in this Report and Recommendation, even if Gill produced verified counter-affidavits in accordance with the Roseboro Notice, her allegations would not survive the Defendant's motion for summary judgment.

than Ms. Peterson's "your people" comments, Gill does not allege that other racial remarks were directed towards her. Nor does she provide specific dates of when the "your people" comments were made.

Regarding the claim of a hostile work environment under the PDA, Gill contends that beginning in August 2017, John Peterson regularly made "offensive comments" regarding Gill's pregnancy and the size of her belly. To be clear, Gill asserts that only Mr. Peterson made comments about her pregnancy during her employment. Gill Dep., 40. Specifically, Gill contends that Mr. Peterson would repeatedly ask when she was going on maternity leave and that "nobody wants their food made by a woman with a big stomach." Gill Dep., 39. It is undisputed that John Peterson relocated to another Dunkin' Donuts store on October 7, 2017 and never worked with Gill after that date. John Peterson Aff. at ¶ 3; Gill Dep., 38–40.

Gill premises the ADA hostile work environment claim on an incident in which she became locked in the walk-in freezer at the Store. Gill contends that John Peterson allegedly overheard a conversation on September 29, 2017 in which Gill mentioned that she suffers from post-traumatic stress disorder ("PTSD"), severe anxiety, claustrophobia, and major depressive disorder. Gill Dep., 42–43. Later that same day, Gill was in the walk-in freezer when John Peterson John turned off the lights and prevented Gill from opening the freezer door causing her to suffer an anxiety attack. Gill Dep., 44–45. Gill informed Kaylee Peterson about this incident and remained off work for several days afterwards due to emotional distress. Id., 45.

On approximately September 30, 2017, Gill reported the freezer incident and her fear to enter the freezer to Kevin Allardi ("Allardi"), a district manager for TBG. Def.'s Br., Ex. 4, Allardi Aff at 1–2. Gill also contends that she disclosed her diagnosed mental impairments and expressed concerns about returning to work with John Peterson. Allardi denies, however, that

Gill told about him about her mental disabilities and also denies that she requested an accommodation for these difficulties. Allardi Aff. at ¶ 6. Allardi stated to Gill that he did not think John Peterson meant harm, but he investigated the incident, and instructed Mr. Peterson to apologize to Gill, which he did on October 4, 2017. Id. at ¶ 8. On October 3, 2017, Gill spoke to Lena Vladsky ("Vladsky"), HR Director for TBG, regarding the freezer incident and Kaylee Peterson's "your people" comments. Gill Dep., 53; Def.'s Br., Ex. 5, Lena Vladsky Aff. at ¶ 4. During the freezer investigation, both Vladsky and Allardi notified Gill that they did not believe Kaylee's "your people" comments constituted discrimination or harassment. Allardi at ¶ 10; Vladsky Aff. at ¶ 6.

Gill and John Peterson worked together on October 4, 6, and 7, 2017, however, there were always other employees working with them. Def.'s Br., Ex. 2 at 10–19; Gill Dep., 31:4–6. Again, it is undisputed that after John Peterson's relocation on October 7, 2017, he never worked with Gill after that date.

Gill's retaliation claim is based on a November 10, 2017 incident in which Gill confronted a co-worker who allegedly was harassing another co-worker with disabilities. Gill Dep., 74–78. On November 13, 2017, both parties in the altercation received written write-ups from Kaylee Peterson. Def.'s Br., Ex. 2 at 23–28. Gill received and signed the write-up alleging that she had spoken to a co-worker in an elevated voice and would have created a disturbance if customers had been present in the store. Id. at 26–28.

On November 17, 2017, Gill received a second written write-up detailing alleged incidents of misconduct dating back to August of 2017 including accusations of "insubordination" for her refusal to get items out the freezer. Def.'s Br., Ex. 2 at 29–31. The disciplinary notice was marked as a final warning and indicated that Gill would be subject to

4

further disciplinary action, including termination, if her behavior and performance did not improve. Id. The final warning write-up listed two occasions in August 2017 where Gill had a "loud, belittling, antagonistic, and intimidating" tone towards a store manager since the manager did not have a headset on and also "created [an] uncomfortable and hostile environment during a shift" due to Gill's "loud and irate demand" with a shift leader. Id. at 29. The final warning also detailed Gill's "unprofessional conduct" on October 21, 2017 where she was reprimanded for her irate conduct towards a co-worker and her failure to alert a manager instead. Id. Other performance and behavior issues in the final warning letter included Gill threatening to sue co-workers for bumping into her, refusing to communicate with certain co-workers, and refusing to walk into the cooler or freezer. Id. The letter concluded with a "specific plan of action for improvement," which notified Gill that future misconduct would lead to disciplinary action up to termination. Id. at 30.

Gill gave birth on November 22, 2017, and reached out to Kaylee Peterson on November 27, 2017 about returning to work. Def.'s Br., Ex. 8. Kaylee Peterson, thereafter, placed Gill on the work schedule on November 30, 2017. Gill worked only one day, and on December 1, 2017, she resigned from her job and sent a text to Kaylee Peterson stating that she had "jumped the gun returning to work so early" and did not have childcare. Defs.' Br, Ex. 2 at 32–33. Gill never contacted anyone at TBG about returning to work. Kaylee Peterson Aff. at ¶ 24.

Gill filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 12, 2018, and on March 29, 2019, the EEOC mailed to Gill a right-to-sue letter which Gill received on April 1, 2019. Def.'s. Br., Ex. 6; Am. Compl. at 5, 20. Thereafter, Gill filed this action on July 1, 2019.

**II.     Summary Judgment Standard**

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

### III. Analysis

#### A. Hostile Work Environment

To prove a hostile work environment, claim under either Title VII (including the PDA) or the ADA, plaintiff must "show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race, pregnancy or disability]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (internal citations omitted).[3]

Title VII requires a person aggrieved by an unlawful employment practice to file a charge with the EEOC within 300 days of the last act of discrimination. 42 U.S.C. § 2000e-5(e)(1). This same filing period also applies to hostile work environment claims under the ADA and the PDA. See Byington v. NBRS, 903 S.Supp2d 342, 351 (D. Md. 2012); see also, Wenzlaff v.

---

[3] The PDA amended Title VII to add that discrimination "because of sex" or "on the basis of sex," includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." Barnes v. Hewlett–Packard Co., 846 F.Supp. 442, 443 (D.Md.1994); 42 U.S.C. § 2000e(k).

6

NationsBank, 940 F. Supp. 889, 892 (D. Md. 1996) (citing 42 U.S.C. § 2000e-5(e)). Generally, because each discrete act starts a new clock for filing charges alleging a wrongful act, the charge must be filed within 300 days after the act occurred. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002). As to hostile work environment claims, however, the continuing violation doctrine applies, and "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id. at 122. Thus, the employee need only file one charge within 300 days of any act which is part of the hostile work environment. Id. at 118. Here, Gill must establish that at least an act constituting the hostile work environment under Title VII, ADA or PDA occurred after November 16, 2017.

      1. Title VII Hostile Work Environment

Plaintiff's claim that she suffered a hostile work environment under Title VII are based upon the purported comments by Kaylee Peterson referring to all African Americans as "your people" and that John and Kaylee Peterson repeatedly made offensive comments about her race on a regular basis to the extent that it became a condition of her employment. At the summary judgment stage, Gill must come forward with evidence not only of the statements made, but also that such statements were so severe and pervasive that it interferes with an employee's work performance. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209 (4th Cir. 2014); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Whether harassment is sufficiently severe to constitute a hostile work environment is typically a fact question, but here, Gill has simply failed to offer any evidence as to how the race-based comments satisfy the third prong of her burden of showing that she suffered an abusive work environment that was so severe and pervasive that it interfered with her work performance.

Gill has also failed to come forward with evidence that the comments regarding her race continued after November 16, 2017. That is, Gill has not articulated any comments or actions by John or Kaylee Peterson based upon her race within the required 300 day filing period which would be part of a hostile work environment. Gill Dep., 24:5–18, 25:13–15. Thus, I recommend **GRANTING** the motion for summary judgment as to the hostile work environment claim under Title VII.

  2. Pregnancy Discrimination Act

Gill bases her claim that she suffered a hostile work environment under the Pregnancy Discrimination Act on the comments made by John Peterson that she needed to go on maternity leave because she had a big belly. Importantly, Gill contends that although John Peterson made other pregnancy related comments, he was the only person to do so. Gill stopped working with John Peterson when he left the store on October 7, 2017 – more than 300 days before Gill filed her charge of discrimination with the EEOC. Gill has not come forth with any evidence that conditions which could constitute a hostile work environment relating to her pregnancy continued after John Peterson left the store in October 2017. Accordingly, I recommend that the district court **GRANT** the motion for summary judgment as to the hostile work environment claim under the Pregnancy Discrimination Act.

  3. ADA Claim

Gill bases the ADA hostile work environment claim initially on the freezer incident which caused her severe emotional distress and caused her to be out of work several days. Gill has also contended that John Peterson slandered her to co-workers and that she was denied reasonable accommodations for her disclosed disabilities of post-traumatic stress disorder, severe anxiety, claustrophobia, and major depressive disorder. The district court found that Gill alleged

8

sufficient facts in her complaint to survive a motion to dismiss. At the summary judgment stage, however, Gill must come forward with admissible evidence under penalty of perjury to establish a factual dispute as to the elements of her claims. Here, she does not provide any evidence of the pervasiveness of the statements made to her, that those statements were based upon her disability, or that the actions of John Peterson or others materially changed the nature of her workplace. See Boyer-Liberto, 786 F.3d 264, 277. Therefore, I recommend that the district court **GRANT** TBG's summary judgment on the ADA hostile work environment claim.

### B. ADA Retaliation Claim

Under the ADA, an employer is prohibited from retaliating against an employee for engaging in a protected activity. 42 U.S.C. § 12203. "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) [she] engaged in protected conduct; (2) [she] suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action." Sowers v. Bassett Furniture Indus., Inc., No. 4:19CV00039, 2021 WL 276169, at *6 (W.D. Va. Jan. 27, 2021) (quoting Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 154 (4th Cir. 2012)). The plaintiff must show that "a reasonable employee would have found the challenged action was 'materially adverse' and that it might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe. Ry. Co v. White, 548 U.S. 53, 68 (2006). For a retaliatory action to be material, it must produce a significant, not trivial, harm. Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015). When those elements are satisfied, the burden shifts to the employer to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions. If the employer satisfies that burden, the plaintiff must demonstrate that the proffered reason is a pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Here, the only potential adverse action to occur within the statutory timeframe is the November 17, 2017 write-up. Gill contends that she engaged in protected activity when she complained about the freezer incident and the altercation with the co-employee who was harassing another co-worker. For a disciplinary write-up to be deemed materially adverse, there must be some additional consequence such as becoming ineligible for a promotion. See Hernandez v. Fairfax City, 719 F. App'x 184, 189 (4th Cir. 2018). In this case, Gill has offered no evidence that receiving the write-up had a materially adverse effect on her employment other than serving as a final warning. Both Gill and the co-worker were written up for getting into a verbal altercation in the Store where customers could hear. Def.'s Br., Ex. 2 at 23–28. Further, evidence supports that the November 17, 2017 write-up addressed legitimate workplace issues unrelated to Plaintiff's alleged complaints of disability discrimination. Id. at 29–31. TBG documented issues with Gill throughout her employment dealing with her interactions with other co-workers, managers, and customers. For example, from July to August 2017, Kaylee Peterson documented six occasions where Gill was tardy and was notified that "future disciplinary action up to and including termination [would] occur" if she continued to arrive late to work. Id. at 9. In August 2017, TBG documented on two occasions where Gill displayed "unprofessional conduct towards [her] coworkers" due to her "loud, belittling, antagonistic. Intimidating" and "irate" tone. Id. at 29. On October 21, 2017, a shift leader submitted a complaint detailing Gill's negative interactions with herself and a new co-worker. Id. at 21, 29. Further, TBG managers documented Gill's altercations and negative interactions with co-workers, such as when Gill scolded a co-worker for workplace messiness during rush hour and was told by the TBG managers to defer to them before addressing co-workers in such a manner. Id. at 20. TBG also documented a negative interaction with a customer where Gill was "sucking her teeth and saying

rude things under her breath" after Gill made an error that required a manager to issue the customer a refund. Id. at 22.

The November 17, 2017 write-up documented Gill's refusal to go into the cooler or freezer. Id. at 29. Gill admitted that going into the cooler and freezer is an essential job function for all crew members. Gill Dep., 218–219. TBG initially attempted to work around Plaintiff's refusal but contends that this created customer service issues. Def.'s Br., Ex. 2 at 30. The write-up pertaining to the freezer is related to her disability but is not based on the disability.

Accordingly, it is **RECOMMENDED** that an order be entered, **GRANTING** TBG's motion for summary judgment. Dkt. 65.

### C. Motion to Compel

Ten days after TBG filed its motion for summary judgment and after the discovery cut-off, Plaintiff filed the Motion to Compel Forensic Imaging, for Order of Preservation of Evidence, for Production of Evidence, for Appointment of Expert and for Sanctions. Dkt. 71. This Court previously recognized that "courts in the Fourth Circuit routinely deny motions to compel that are filed after the discovery deadline when no good cause is shown for the delay." See Reed v. Beverly Hills Porsche, No. 6:17-cv-59, 2018 WL 10396251 (W.D. Va. Jan. 12, 2018). Gill's motion was filed after the expiration of the July 23, 2021 extended discovery deadline (Dkt. 63) at her request (Dkt. 44). Thus, I find the motion to compel untimely.

The discovery requests about which Plaintiff now complains were served on June 1, 2021, and July 14, 2021. Gill argues that TBG possesses or destroyed video footage evidence and that Chad Hutchinson's affidavit does not explain whether the footage can be restored. Pl. Mot. to Compel at 3–4, Dkt. 71. Gill also argues that TBG failed to respond to her discovery requests and redacted information on her requested timesheets of John Peterson's shifts. Id. at 4–5. TBG responds that the redacted names on the timesheet are non-managers and not responsive

to Plaintiff's requests for production that specifically sought information with respect to managers working in October 2017. The Defendant complied with the interrogatory requests. The request for a court appointed neutral forensic expert is unnecessary. Hutchinson was a technician for CoLiant Solutions, which installs and provides tech support for Dunkin Donuts' video surveillance systems. The request for TBG "to submit computer, electronic surveillance, and ALL electronic devices to a neutral forensic expert for review and evaluation" is burdensome and there is no basis for this request.

Lastly, both parties request sanctions against the other party for the costs associated with Gill filing this motion and in TBG's case for the costs and fees associated with having to defend the motion.

Finding the Plaintiff's motion to compel untimely and unnecessary, the motion is **DENIED**. Dkt. 71.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, I recommend that the district court **GRANT** Defendant's motion for summary judgment and I **DENY** Plaintiff's motion to compel.

The clerk is directed to transmit the record in this case to the Honorable Thomas T. Cullen, United States District Judge, and to provide copies of this Report and Recommendation to the *pro se* plaintiff and counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C.

§ 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

        Entered:  February 28, 2022

        *Robert S. Ballou*

        Robert S. Ballou
        United States Magistrate Judge